IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:07-cv-00140-RLV-DSC

PERFORMANCE SALES & )
MARKETING LLC, PSM GROUP, )
INC., and GREG SEREY, )
                                              )
            Plaintiffs, )
                                              )
      v. )                **MEMORANDUM AND ORDER**
                                              )
LOWE'S COMPANIES, INC., )
                                              )
            Defendant. )

**THIS MATTER** is before the Court on Defendant Lowe's Motion for Summary Judgment (Doc. 180) and Plaintiffs' Motion for Partial Summary Judgment and to Dismiss (Doc. 54) and Motion to Strike (Doc. 221).

## I. PROCEDURAL AND FACTUAL HISTORY

A general statement of facts surrounding the parties' relationship is available in the Court's prior Order concerning Lowe's Motion to Dismiss the original Complaint. (Doc. 45.) In an Order filed September 14, 2012, the Court further reviewed the allegations and evidence pertinent to Plaintiffs Performance Sales & Marketing, PSM Group, and Greg Serey's (collectively, "PSM's") claims of fraud and misrepresentation (Counts V, VI, VII, and VIII), and related contention that Lowe's had an undisclosed plan to eliminate third-party, in-store-service providers ("ISSPs") and to take their work in-house. (Doc. 203.) The Court concluded that Plaintiffs' evidence insufficiently suggests that such a plan, the "In-Store Services Strategy," was developed by those at the apex of Lowe's corporate structure prior to the 2003 Merchandising In-Store Services Agreement ("ISSA"), by which PSM began its exclusive business relationship

1

with Lowe's as part of a large and obvious effort to consolidate ISSPs. (Doc. 203 at 21.) The Court therefore concluded that although Plaintiffs' fraud-based claims survived the standards of Rule 12(b)(6), related evidence failed to justify the depositions of three high-ranking Lowe's executives. (Docs. 203, 210.) Defendant now moves for summary judgment on all remaining claims.

Following Lowe's decision in 2002 to contract directly with third-party service providers and reduce the number of service groups working in its stores, PSM was selected to be one of three ISSPs in Lowe's seasonal-living division. In 2003, Lowe's and PSM entered into a contract with the understanding that it would expire in one year. (Doc. 187-11 at 25.) Thereafter, as discussed in the Court's September 14, 2012, Order, Lowe's and PSM signed one-year contracts with varying payment terms. (Doc. 203 at 4–5 n.8.) The February and September 2005 agreements contained "termination for convenience" provisions, which Lowe's decided to exercise in July of 2006. On September 19, 2006, PSM submitted a final set of invoices to Lowe's, which Lowe's has challenged and left unpaid.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those particular portions of the record before the Court that the movant believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of

allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

A. Fraud and Negligent Misrepresentation (Counts V–VIII)

As noted in the Court's September 14, 2012, Order, these claims survived Defendant's Motion to Dismiss because of two allegations: (1) in or around 2003, Lowe's VP Dale Pond told John Zalonis, a principal of a different in-store service provider, that Lowe's plan was to eventually take over the ISSPs' business and that this plan was to be kept a secret, and (2) the In-Store Services Strategy was memorialized in board minutes created by Greg Bridgeford. (Doc. 79 at 2; Doc. 203 at 13–15, 20.) However, in his deposition, Mr. Zalonis testified that Mr. Pond did not make such a statement to him.[1] (Doc. 162-1 at 9–10, 12) (Mr. Zalonis agreed that the allegation within the Amended Complaint regarding his conversation with Mr. Pond was "not at all accurate" and further said, "The only conversation I had with Dale on [the matter of Lowe's wanting to bring service groups in-house] was he said to me, he said, there's going to be service

---

[1] Although the evaluation witness credibility is a task most appropriately left to the jury, Plaintiffs have put forth no evidence to contradict this account of Mr. Zalonis's conversation with Mr. Pond.

3

consolidation. He said you want to make sure you perform well, do the best you can, so that at the end you want to be one of the last guys standing. And if we ever decide to bring it in-house, maybe we'd buy you out or something."). Moreover, such board minutes have not been presented to the Court. Since Plaintiffs' evidence otherwise insufficiently establishes that a plan to eliminate all third-party vendors was developed prior to the 2003 ISSA, summary judgment shall be granted as to counts five through eight.

B. Claims for Unpaid Invoices (Counts I–IV)

PSM's final two invoices, which total $637,573.84, remain unpaid. Lowe's, however, argues that PSM cannot substantiate $95,000 of this amount. Lowe's further asserts its entitlement to offset $5 million, already paid to PSM, claiming that PSM's entitlement to this amount likewise cannot be substantiated.

Plaintiffs have submitted a declaration from Michael Byerly regarding Lowe's contention that PSM overbilled Lowe's by more than $5 million in 2006. (Doc. 215-12) (explaining, among other things, instances of "No Sign Outs"). This declaration disputes the findings of Lowe's expert witness, David Wedding, that PSM failed adequately to document the hours worked by PSM employees in Lowe's stores between February 4, 2006, and September 1, 2006 (Doc. 160), as was contractually required (Doc. 79-5 at 6, 8–9).

Mr. Wedding noted in his report that he was not able to reconcile several instances in which PSM employees were clocked in as working in Lowe's stores for more than eight consecutive hours, and in multiple cases, for twenty-four consecutive hours, claiming that key records were missing. (Doc. 160 at 9) ("PSM has not produced any daily payroll records reflecting the amount of time it paid its employees for working at Lowe's. PSM has not produced any records reflecting the amount of time it billed to Lowe's for any of its individual employees.

Specifically, PSM did not produce Clock-In/Clock-Out records for the period February 4, 2006 to June 2, 2006; monthly reconciliations for the period between February 4, 2006 to September 15, 2006 detailing the differences between the Clock-In/Clock-Out hours and invoiced hours; and daily payroll records of PSM for the period February 4, 2006 to September 15, 2006.").

Mr. Byerly has explained, "On any given day, PSM would have 300 to 350 employees system-wide potentially conducting services activities in potentially any of the 1100+ Lowe's stores, with some employees working at multiple stores each day. With hundreds of employees it is not surprising that there were daily instances where employees failed to clock-out for one reason or another." (Doc. 215-12 at 3.) Mr. Byerly further explained PSM's procedure for dealing with such failures to sign out.

In response to Plaintiffs' Memorandum in Opposition and Mr. Bylerly's declaration, Defendant produced the declaration of Dustin Green, who has stated, "The only PSM payroll records that were produced in discovery for the time period at issue, February 4, 2006–September 1, 2006, were obtained by Lowe's pursuant to subpoenas to PSM's payroll processing company, Automatic Data Processing, Inc. ('ADP')." (Doc. 220 at 3.) Plaintiffs, however, insist that the 2006 wage records, "consist[ing] of documents and computer discs of ADP," have been produced. (Doc. 221-1 at 3.)

The bulk of the last two invoices having been substantiated, and Defendant bearing the burden of establishing its entitlement to offset,[2] the matter of whether the daily payroll records produced by Plaintiffs justify the PSM invoices issued from February through September of

---

[2] Although Lowe's has yet to file an Answer in response to Plaintiffs' Amended Complaint, it has already set forth its counterclaim within its Answer to the original Complaint. (Doc. 50 at 33–34); *see Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011) ("Revisions to a complaint do not require revisions to a counterclaim." (quoting *Dunkin' Donuts, Inc. v. Romanias*, No. 00-1886, 2002 WL 32955492, at *2 (W.D. Pa. May 29, 2002) (citing Fed. R. Civ. P. 13))).

2006 thus remains for the jury to resolve. Defendant's Motion shall therefore be denied as to count one.

In regard to count two, a claim for an "account stated" requires an acknowledgment of the correctness of that statement by the party to be charged. *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990) (noting that "the plaintiff must prove that the defendant agreed to pay a specific account to the plaintiff" in order to maintain an "account stated" claim under North Carolina law); *Kirby v. Winston*, 249 S.E.2d 882, 883–84 (N.C. Ct. App. 1978) ("To effect an account stated the outcome of the negotiations must be the recognition of the balance due from one of the parties to the other with a promise, express or implied, to pay that balance."). Here, Lowe's has not acknowledged the correctness of PSM's final two invoices. The Court has already determined that "Lowe's informed PSM of its general dissatisfaction with PSM's billing and staffing practices related to the final invoices" and that Lowe's "objection put PSM on notice that all of the amounts invoiced during th[at] period of time were subject to dispute." (Doc. 46 at 4; *see also* Doc. 28 at 2–3; Doc. 29 at 1–2; Doc. 79-12 at 2–3.) Thus, Lowe's is entitled to summary judgment on count two.

As to counts three and four, as already noted by the Court in its June 4, 2010, Order, the existence of an express contract precludes recovery on either a *quantum meruit* or unjust-enrichment theory. (Doc. 45 at 8.) Although the Court then declined to dismiss these counts because the existence of an express contract had not been definitively established at that time, there remains no genuine issue of material fact as to the existence of an express contractual relationship between Lowe's and PSM during 2006. (*See, e.g.*, Doc. 215 at 21.) Accordingly, summary judgment shall be granted as to these counts.

C. Economic Duress as to the 2005 and 2006 Contracts, Unilateral Changes to the ISSAs, and GPO System-related Claims (Counts XI–XIII, XXIII–XXVI)

Plaintiffs do not contest dismissal of the above counts. (Doc. 215 at 21.) Accordingly, Defendant's Motion shall be granted as to counts eleven through thirteen and twenty-three through twenty-six.

D. Unfair and Deceptive Trade Practices (Count XXVIII)

Plantiff's claim brought pursuant to the North Carolina Unfair Trade Practices Act ("NCUTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, is based only upon Lowe's alleged recruitment of PSM employees.[3] (Doc. 79 at 81–82.)

As Defendant notes, Plaintiffs have presented no admissible evidence regarding Lowe's attempts to hire PSM employees en masse. (*See* Doc. 218 at 9–10.) In any event, as indicated in the case cited within Plaintiffs' Memorandum in Opposition (Doc. 215 at 18), the hiring of a competitor's employees is not itself unfair or deceptive; rather, clandestine hiring, and the use of confidential information obtained through such hiring, as a means to destabilize the competitor and to gain an anticompetitive advantage was there deemed to be in violation of the NCUTPA, *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 620 S.E.2d 222, 230–31 (N.C. Ct. App. 2005). Here, PSM has not put forth sufficient evidence of recruitment efforts that might have impeded PSM's operations in a manner inhibitive of competitive fairness, *cf. CNC/Access, Inc. v. Scruggs*, No. 04-1490, 2006 WL 3550854, at *11 (N.C. Sup. Ct. Nov. 15, 2006) (addressing whether a "significant number of key employees" departed and whether an anticompetitive

---

[3] Additional bases were pleaded but dismissed as legally inadequate pursuant to the Court's June 4, 2010, Order (Doc. 46 at 23–26) or are here uncontested (Doc. 215 at 21) (addressing counts eleven, twelve, and twenty-three through twenty-six) or have not survived summary judgment, as in the case of count seven.

advantage was gained), particularly in light of the 2006 ISSA's "termination for convenience" provision (Doc. 79-5 at 10). Accordingly, summary judgment shall be granted as to count twenty-eight.

E. Unaddressed Claims (Counts X, XVI, XVIII)

In response to Defendant's Motion for Summary Judgment, Plaintiffs have left unaddressed the claims for breach of the 2004 ISSA (Count X), breach of the implied duty of good faith (Count XVI), and an accounting (Count XVIII).

In count ten, PSM contends that Lowe's did not pay all funds due under the 2004 contract. However, Lowe's accounting records indicate that PSM received 2.5% of the cost of goods purchased for 2004, including for new stores. (Doc. 184 at 2; Doc. 184-1 at 2–3; Doc. 184-2 at 2–22.) PSM having offered no competing evidence, summary judgment shall be granted as to this count.

Like the Plaintiffs' NCUTPA claim, their claim for breach of the implied duty of good faith and fair dealing is now based only upon Lowe's alleged recruitment of PSM employees. Plaintiffs having failed to present evidence establishing Defendant's extensive recruitment of PSM employees or how such recruitment efforts have "injure[d PSM's] right . . . to receive the benefits of the agreement," count sixteen shall be dismissed. *Williams v. Craft Dev., LLC*, 682 S.E.2d 719, 723 (N.C. Ct. App. 2009) (quoting *Bicycle Transit Auth. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985)).

Finally, in light of the claims remaining for trial, summary judgment is hereby granted as to Plaintiffs' request for an accounting, count eighteen.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment (Doc. 180) be **GRANTED** in part and **DENIED** in part. Summary judgment is hereby granted as to Counts II–VIII, X–XIII, XVI, XVIII, XXIII–XXVI, and XXVIII. Count I remains for trial.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Doc. 221) be **GRANTED** in part and **DENIED** in part. While the Court declines to strike from the record Defendant's Reply Brief (Doc. 218) or Accompanying Declaration (Doc. 220), it has considered Plaintiffs' Surreply (Doc. 221-1).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment and to Dismiss (Doc. 54) be **DENIED**. Defendant has presented a genuine issue of material fact as to its breach-of-contract claim regarding overpayment in 2006.

Signed: August 20, 2013

Richard L. Voorhees
United States District Judge